IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

CANDICE WATKINS, on behalf of
herself, and all others
similarly situated,

                Plaintiff,

     v.

DINEEQUITY, INC., et al.,

                Defendants.

HONORABLE JEROME B. SIMANDLE

Civil No. 11-7182 (JBS/AMD)

**OPINION**

APPEARENCES:

Wesley Glenn Hanna, Esq.
Sander D. Friedman, Esq.
LAW OFFICE OF SANDER D. FRIEDMAN, LLC
125 North Route 73
West Berlin, NJ 08091
      Counsel for Plaintiff

John B. Kearney, Esq.
Christopher Neal Tomlin, Esq.
BALLARD SPAHR LLP
210 Lake Drive East
Suite 200
Cherry Hill, NJ 08002-1163
      Counsel for Defendants

**SIMANDLE**, Chief Judge:

## I.  INTRODUCTION

     Plaintiff, Candice Watkins, brings a putative class action against Defendants DineEquity, Inc. and Applebee's International, Inc. d/b/a Applebees Neighborhood Grill and Bar ("Applebee's"), d/b/a International House of Pancakes, LLC ("IHOP") (collectively, "Defendants") seeking damages,

injunctive relief and other relief under New Jersey's Truth in Consumer Contract Warranty and Notice Act ("NJTCCWNA").  In her single-count Amended Complaint [Docket Item 20], Plaintiff Watkins claims she is a consumer who has purchased soft drink beverages and beers at Defendant's Applebees' and IHOP restaurants in New Jersey that were offered on the menus without prices; she alleges that offering such beverages for sale without indicating the prices violates New Jersey law, in the NJTCCWNA, and is contrary to clearly established New Jersey law requiring point-of-purchase notice of an item's selling price. This action is before the Court on Defendants' motion to dismiss Plaintiff's Amended Complaint for failure to state a claim pursuant to Fed. R. Civ. P. 12(b)(6).  [Docket Item 22.]  As will be explained below, Plaintiff has failed to state a prima facie case for violation of NJTCCWNA.  The Court will dismiss Count I without prejudice to Plaintiff's right to seek leave to file a curative amendment that states a claim for relief.

## II.  FACTUAL ALLEGATIONS AND PROCEDURAL HISTORY

Defendants own and operate restaurants, and Defendants' restaurants "use menus created by or on behalf of DineEquity, Applebee's, and/or IHOP."  Am. Compl. ¶¶ 4, 6.  The menus Defendants provide to customers do not provide the prices of "soda, beer, mixed drinks, wine, coffee, and ... other

beverages." Id. at ¶¶ 8, 9.  Ms. Watkins is a consumer who has purchased food and beverages at Applebee's and IHOP franchise locations in New Jersey, and she has purchased beverages (soft drinks and beers) despite the absence of prices on their menus. Id. at ¶ 13.

On October 31, 2011, Ms. Watkins filed this action in the Superior Court of New Jersey, Camden County-Law Division. Notice of Removal ¶ 2.  Defendants subsequently removed the action to this court based on diversity jurisdiction under 28 U.S.C. §§ 1332(d)(2)(A)[1] and (d)(6).[2]  Id. at ¶ 8.

On March 12, 2012, Plaintiff filed an Amended Complaint pursuant to Rule 15(a)(1)(A).  On April 9, 2012 Defendants filed the instant motion to dismiss.  Briefing on the motion is now complete and it is ripe for decision.

---

[1] Plaintiff is a citizen of New Jersey, Defendant DineEquity is incorporated under the laws of Delaware with its principal place of business in California, Defendant Applebee's is incorporated under the laws of Delaware and has its principal place of business in Missouri, and Defendant IHOP is incorporated under the laws of Delaware with its principal place of business in California.  Notice of Removal ¶¶ 4-7.

[2] The Amended Complaint pertains to 96 restaurants in New Jersey, which allegedly did not disclose beverage prices on their menus.  As such, the putative class contains more than one hundred putative class members and at least $5 million in controversy, and is therefore alleged to satisfy the requirements of the Class Action Fairness Act of 2005, 28 U.S.C. § 1332 (d). Id. at ¶ 11.

## III. DISCUSSION

### A.  Standard for Motion to Dismiss

In deciding a defendant's 12(b)(6) motion to dismiss, the Court must "accept all factual allegations as true, construe the complaint in the light most favorable to the plaintiff, and determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief."  Phillips v. County of Allegheny, 515 F.3d 224, 231 (3d Cir. 2008) (quoting Pinker v. Roche Holdings Ltd., 292 F.3d 361, 374 n.7 (3d Cir. 2002)).

Thus, "to survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  Ashcroft v. Iqbal, 565 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)); see also Fowler v. UPMC Shadyside, 578 F.3d 203, 210 (3d Cir. 2009).

"While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff[] [must] provide the 'grounds' of his 'entitle[ment] to relief' [beyond] labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Twombly, 550 U.S. at 555 (quoting Papasan v. Allain, 478 U.S. 265, 286 (1986)).

> Therefore, after *Iqbal,* when presented with a motion
> to dismiss for failure to state a claim, district
> courts should conduct a two-part analysis.  First, the
> factual and legal elements of a claim should be
> separated.  The District Court must accept all of the
> complaint's well-pleaded facts as true, but may
> disregard any legal conclusions.  Second, a District
> Court must then determine whether the facts alleged in
> the complaint are sufficient to show that the
> plaintiff has a "plausible claim for relief." In other
> words, a complaint must do more than allege the
> plaintiff's entitlement to relief.  A complaint has to
> "show" such an entitlement with its facts.

Fowler, 578 F.3d at 210-211 (citations omitted).  The Court will

thus look at Plaintiff's single count to determine what would be

required for a plausible case then decide whether the alleged

facts are sufficient to satisfy the requirement.

### B.   Count I: Truth in Consumer Contract Warranty and Notice Act, N.J. Stat. Ann. 56:12-14 et seq.

Plaintiff's sole asserted claim arises under the New Jersey

TCCWNA.  "The TCCWNA ... prohibits a seller from entering into a

contract with a consumer that includes any provision that

violates a federal or state law." Bosland v. Warnock Dodge,

Inc., 396 N.J. Super. 267, 278 (App. Div. 2007); see also Kent

Motor Cars, Inc. v. Reynolds and Reynolds Co., 207 N.J. 428, 457

(2011) ("The purpose of the TCCWNA ... is to prevent deceptive

practices in consumer contracts by prohibiting the use of

illegal terms or warranties in consumer contracts.").

The statute provides in relevant part:

> No seller, lessor, creditor, lender or bailee shall in
> the course of his business offer to any consumer or

> prospective consumer or enter into any written
> consumer contract or give or display any written
> consumer warranty, notice or sign . . . which includes
> any provision that violates any clearly established
> legal right of a consumer or responsibility of a
> seller, lessor, creditor, lender or bailee as
> established by State or Federal law at the time the
> offer is made or the consumer contract is signed or
> the warranty, notice or sign is given or displayed.

N.J. Stat. Ann. § 56:12-15.  A person who violates NJTCCWNA

"shall be liable to the aggrieved consumer for a civil penalty

of not less than $100.00 or for actual damages, or both at the

election of the consumer, together with reasonable attorney's

fees and court costs."  N.J. Stat. Ann. § 56:12-17.

    In order to bring a claim under NJTCCWNA, a plaintiff must

demonstrate (1) the plaintiff is a consumer within the statute's

definition[3]; (2) the defendant is a seller, lessor, creditor,

lender or bailee; (3) the defendant (a) offers or enters into a

written consumer contract, or (b) gives or displays any written

consumer warranty, notice, or sign; and (4) the offer or written

contract, warranty, notice or sign included a provision that

violates any clearly established legal right of a consumer or

responsibility of a seller.

    The critical issues in this case are (1) whether a

restaurant menu constitutes an "offer" or a "written consumer

---

[3] "Consumer means any individual who buys, leases, borrows, or
bails any money, property or service which is primarily for
personal, family or household purposes."  N.J. Stat. Ann. §
56:12-15.

contract, warranty, notice or sign"; and (2) whether the
omission of prices from a menu falls under the statute's
language prohibiting the inclusion of a provision(s) that
violate a consumer's clearly established legal rights.

### 1. The Parties' Arguments

Defendants argue Ms. Watkins has failed to raise a legally
cognizable claim under NJTCCWNA.  Defendants advance three
independent reasons to support dismissal.  First, a restaurant
menu is neither a consumer contract nor a warranty, notice or
sign.  Second, NJTCCWNA only covers the inclusion of provisions
that violate legal rights, not mere omissions.  Finally, as a
matter of law, Defendants did not violate a clearly established
legal right.

Ms. Watkins states that N.J Stat. Ann. § 56:8-2.5, part of
New Jersey's Consumer Fraud Act ("CFA"), requires sellers "of
any merchandise at retail" to "plainly mark[] [merchandise] by a
stamp, tag, label or sign either affixed to the merchandise or
located at the point where the merchandise is offered for sale"
with the total price of the merchandise.  Plaintiff then argues
that N.J. Stat. Ann. 56:8-2.5 "can only be read as requiring
restaurants to price items offered on their menus," and that by
omitting certain beverage prices from their menus, Defendants
violated a legal responsibility.  Additionally, Plaintiff
contends that menus are functionally contracts, warranties,

notices *and* signs.  Consequently, Ms. Watkins asserts that Defendants are subject to NJTCCWNA because (1) menus constitute contracts, warranties, notices and signs, and (2) omitting certain beverage prices from menus violates a responsibility of the seller established under state or federal law.

2. <u>Statutory Interpretation Under New Jersey Law</u>

The basis for this Court's jurisdiction is diversity of citizenship and the Class Action Fairness Act of 2005.  When sitting in diversity, a federal court must apply the substantive law of the state of whose law governs the action.  <u>Jaasma v. Shell Oil Co.</u>, 412 F.3d 501, 507 n.5 (3d Cir. 2000) (citing <u>Orson, Inc. v. Miramax Film Corp.</u>, 79 F.3d 1358, 1373 n.15 (3d Cir. 1996)).  In the instant case, Ms. Watkins alleges Defendants' New Jersey franchise locations have engaged in conduct violative of New Jersey law.  As such, New Jersey substantive law controls, and this Court must predict how the New Jersey Supreme Court would decide the issue.  <u>Specialty Services Intern., Inc. v. Continental Gas Co.</u>, 609 F.3d 223, 237 (3d Cir. 2010) (citing <u>Erie R.R. Co. v. Tompkins</u>, 304 U.S. 64, 78-80 (1938)).  However, where, as here, the state Supreme Court has not ruled on the specific issue before the federal court, the federal court can consider, but not give persuasive effect to, lower court opinions and other reliable data.  <u>Berrier v. Simplicity Mfg., Inc.</u>, 563 F.3d 38, 45 (3d Cir. 2009) (citing

Nationwide Insurance Co. v. Buffetta, 230 F.3d 634, 637 (3d Cir. 2000)).

Under New Jersey Law, statutory construction begins with the plain language of the statute. Miah v. Ahmed, 179 N.J. 511, 520 (2004) (citing Merin v. Maglaki, 126 N.J. 430, 434 (1992)). "In the absence of contrary legislative intent, such language should be given its ordinary meaning." Id. (citation omitted). Clear and unambiguous statutory language is enforced as written. Id. The legislative history and the statute's remedial objectives are also relevant to statutory interpretation when no single plain meaning is clear. Id. at 521-22.

More specifically, "[i]n construing [NJ]TCCWNA on a motion to dismiss, the court must determine if the Legislature intended to prohibit the conduct alleged," and the analysis starts with the statute's language. Smith v. Vangaurd Dealer Services, L.L.C., 2010 WL 5376316 *2 (N.J. Super. Ct. App. Div. Dec. 21, 2010) (citations omitted).

3. Whether a restaurant menu constitutes an offer for a consumer contract or a written consumer contract, warranty, notice or sign

a. Offer of a written contract

Among other things, the NJTCCWNA pertains to a seller who "in the course of his business [makes an] offer to any consumer or prospective consumer . . . which includes any provision that violates any clearly established legal right of a consumer . . .

9

as established by state or federal law at the time the offer is made . . . ."  N.J. Stat. Ann. § 56:12-15.  From the wording of the statute, it seems clear that an offer need not blossom into a full-fledged consumer contract to be actionable, so long as the offer includes a provision that violates a clearly established state or federal legal right of a consumer.

A restaurant menu would appear to suffice as an offer by the restaurant to provide the consumer with the listed food or beverage.  In the restaurant context, Black's Law Dictionary's definition of an "offer" seems particularly apt: "The act or instance of presenting something for acceptance."  Black's Law Dictionary 1189 (9th ed. 2009).  The recent unpublished Appellate Division opinion, Dugan v. TGI Friday's, Inc., 2011 WL 5041391 (N.J. Super. App. Div. Oct. 25, 2011), discussed below, assumed that a restaurant menu was an "offer," referring to the "offer encompassed by TGIF's menu."  Id. at *8.  This Court, likewise, assumes that a restaurant menu constitutes an "offer" for purposes of the TCCWNA.

b. Written consumer contract

Courts interpreting the statute have found that NJTCCWNA applies to contracts, warranties, notices and signs.  DeHart v. U.S. Bank, N.A., 811 F. Supp. 2d 1038, 1051 (D.N.J. 2011).

Defendants claim NJTCCWNA, plainly read, covers four particular documents: written contracts, warranties, notices, or

signs.  While Defendants concede a menu may contain one element of a contract, an offer, they argue a menu is "merely a list of food dishes and beverages" and lacks the contract elements acceptance and consideration.  Defs.' Mot. to Dismiss 10.

Ms. Watkins argues NJTCCWNA represents remedial consumer protection legislation, and, as such, is entitled to liberal construction to advance its beneficial purposes.  Under this approach, Plaintiff claims a menu constitutes a contract.

The question of whether a restaurant menu constitutes a contract has not been expressly addressed by New Jersey Courts.[4] The Court does not need to decide this issue because it is convinced the menu at issue can adequately fit within NJTCCWNA's coverage of offers, as discussed above, and alternatively notices and signs, as discussed below.

### c. Warranty

Defendant argues a menu is not a warranty because it is merely a list of items offered by a restaurant and not a promise that some aspect of the contract is guaranteed by the seller.

Plaintiff asserts that a restaurant menu is a list of promises/warranties.  To support this claim, Plaintiff quotes

---

[4]  As a point of comparison, the check presented by a restaurant to a consumer at the end of the meal may be more easily defined as a written consumer contract.  The check contains each item offered by the restaurant and accepted by the consumer, the consideration in terms of the beverages and food provided, as well as the price of each item and the total amount owed.

the "SkinnyBee™ Margarita" description from an Applebee's menu,
"This refreshing drink boasts Hornitos™ 100% Agave tequila and
around 100 calories." Plaintiff asserts that the description is
an example of a warranty conveyed by Defendant's menu. Pltff.'s
Brief in Opposition at 11, Ex. N.

New Jersey finds an "express warranty" may be established
by "any description of the goods which is made part of the basis
of the bargain ...." N.J. Stat. Ann. 12A:2-313. This definition
is consistent with Black's Law Dictionary, which defines
"warranty" as "an express or implied promise that something in
furtherance of the contract is guaranteed by one of the
contracting parties; esp., a seller's promise that the thing
being sold is as represented or promised." Id. at 1725 (9th ed.
2009).

Whether or not a specific product description appearing on
a menu is a warranty need not be decided here because it is
immaterial to Plaintiff's claim. Ms. Watkins is not claiming
that she was served a beverage that varied from the menu
description.

### d. Notice and Sign

"Notice" and "sign" appear in NJTCCWNA alongside "contract"
and "warranty." These words cannot be defined in isolation.
Rather, "[t]he meaning of words [used in a statute] may be
indicated and controlled by those [words] with which they are

12

associated." Ahmed, 179 N.J. at 521 (quoting Germann v. Matriss, 55 N.J. 193, 220 (1970)). However, the inclusion of the terms "notice" and "sign," words inarguably more inclusive than "contract" and "warranty," demonstrates the legislature's intent for NJTCCWNA to provide broader consumer protection.

Defendants' interpretation of "notice" and "sign" as having narrow legal applications[5] is contrary to the New Jersey courts' policy of construing remedial legislation "liberally in favor of consumers." Cox v. Sears Roebuck, 138 N.J. 2, 15 (1994). Plaintiff argues for a more general definitions of "notice" and "sign," and argues that a restaurant menu falls within both definitions. The Court agrees with Plaintiff.

As a noun, "notice" is generally defined as "a written or printed announcement." Merriam-Webster.com (2012), http://www.m-w.com/dictionary/notice. And "sign," as a noun, is generally defined as "a display (as a lettered board or a configuration of neon tubing) used to identify or advertise a place of business or a product"; or, "a posted command, warning, or direction." Merriam-Webster.com (2012), http://www.m-

---

[5] Defendants define "notice" as "a warning, announcement or notification required by law." Defendants then use the phrase "required by law" to argue that the legislature could not have intended the word "notice," in the context of the statute, to cover the more general understanding of the term. Additionally, Defendants dismiss that a restaurant menu could constitute a "sign" under NJTCCWNA because menus are typically given to individual consumers and are not posters, billboards, or public notifications.

w.com/dictionary/sign.  It is not a stretch to imagine that the general, broader understandings of notice and sign are relevant to the NJTCCWNA because they are capable of containing the type of illegal provisions NJTCCWNA seeks to prohibit.

In passing the NJTCCWNA, the New Jersey Legislature was concerned with contracts, warranties, notices or signs that include illegal provisions intended to "deceive[] a consumer into thinking that they are enforceable" and to result in the consumer failing to enforce his rights.  L. 1981, c. 454, Sponsor's Statement to Assembly Bill No. 1660 (N.J. 1981).  Additionally, "the NJTCC[WNA] can be violated if a contract[,] [] warranty [or notice or sign] simply contains a provision prohibited by state or federal law, and it provides a remedy even if the plaintiff has not suffered actual damages." McGarvey v. Penske Automotive Group, Inc., 639 F. Supp. 2d 450, 458 (D.N.J. 2009) (quoting Barrow v. Chase Manhattan Mortg. Corp., 465 F. Supp. 2d 347, 362 (D.N.J. 2006)).

Moreover, interpreting "notice" and "sign" broadly enough to encompass a restaurant menu is consistent with the liberal construction afforded other pieces of remedial legislation to provide broad protections for New Jersey consumers.  See Jefferson Loan Co., Inc. v. Session, 397 N.J. Super. 520, 534-535 (App. Div. 2008) (interpreting the term "unconscionability" liberally "to effectuate the public purpose of the CFA")

14

(citations omitted); <u>Gennari v. Weichart Co. Realtors</u>, 148 N.J.
582, 604-607 (N.J. 1997) (liberally construing the intent
requirement for an affirmative act or misrepresentation under
the CFA); <u>Cox</u>, 138 N.J. at 15 (liberally construing "unlawful
act" in the context of the CFA); <u>New Mea Constr. Corp. v.
Harper</u>, 203 N.J. Super. 486, 502 (App. Div. 1985) (reversing and
remanding to the Law Division because, liberally construed, the
CFA can be applied to the factual circumstances of the case).

The Court finds a restaurant menu fits within the
definition of a notice or sign, or both, as presented in the
NJTCCWNA context of a consumer transaction because a restaurant
menu is a written document that announces menu items and
identifies the specific food and beverage products offered for
sale by the restaurant.  The restaurant's bill of fare, whether
on a blackboard or a card handed to the customer, fits the
meanings of a notice and a sign.

In summary, the Court holds that a restaurant menu may be
considered an offer, a notice and a sign for NJTCCWNA purposes.

4. <u>Whether the omission of prices from a menu falls
   under the statute's language prohibiting the
   inclusion of a provision(s) that violate a
   consumer's legal rights</u>

Defendants argue that the text of the NJTCCWNA, the
legislative history, and the cases that have applied the
NJTCCWNA indicate the statute applies solely to illegal terms

and provisions that are included, in writing, in the statutorily significant documents.  Under Defendants' interpretation, omissions do not trigger NJTCCWNA.

On the other hand, Ms. Watkins argues NJTCCWNA applies to both inclusions and omissions.  Under Plaintiff's approach, the determination turns not on inclusion or omission, but simply whether there has been a violation of a "clearly established legal right of the consumer or responsibility of a seller as established by State or Federal law."  N.J. Stat. Ann. 56:12-15.

Plaintiff claims Dugan v. TGI Friday's, Inc. stands for the proposition that price omissions from a restaurant menu can trigger a NJTCCWNA claim. In Dugan, TGI Friday's charged the plaintiff $2.00 for a Coors Lite at the bar and then $3.59 for the same beverage after she moved to a nearby table.  2011 WL 5041391 *1 (N.J. Super. Ct. App. Div. Oct 25, 2011).  The Appellate Division declared, "[Plaintiff's] grievance revolves around the undisclosed price differential for the same product . . . ."  Id.  Additionally, the plaintiff in Dugan brought two counts, one under the New Jersey Consumer Fraud Act ("CFA"), N.J. Stat. Ann. § 56:8-1 et seq., and a second under NJTCCWNA. To prove her CFA claim, the plaintiff needed to sufficiently allege three elements: (1) unlawful conduct by defendant, (2) an ascertainable loss by plaintiff, and (3) a causal relationship

between the unlawful conduct and the ascertainable loss.  Id. at *6.

In ruling on whether the plaintiff's complaint adequately alleged an ascertainable loss, the Appellate Division focused exclusively on the price differential between the bar price ($2.00) and the table price ($3.59) of the Coors Lite: "At the very least, if proven, [plaintiff] would logically have lost the benefit of a $2.00 beer and paid $1.59 more for the privilege of moving from the bar to a nearby table.  This is an objective out-of-pocket loss."  Id. at *7.

The unconscionable practice giving rise to CFA liability in Dugan was not the omission of a price term in the table menu. If that were the case, the Appellate Division would not have parsed the underlying CFA claim as it did.  The Dugan decision made the important assumption that Mrs. Dugan was claiming that there was a "secret switch" of prices from the $2.00 beer at the bar to the undisclosed $3.59 beer on the table menu.  Id. at *7. The "ascertainable loss" required for the CFA was seen as the difference of $1.59 between what she originally paid and the undisclosed amount charged for her second beer.  Id.  The omission of a price on the table menu was evidence of the "secret switch" of which she complained, but it was the misleading switch, not the omission, that was the crux of her claim.  The Appellate Division then concluded that because the

17

plaintiff alleged facts sufficient to support a CFA claim,
"[t]hose allegations are therefore sufficient to establish a
potential" NJTCCWNA violation.  Id. at *8.  The unconscionable
commercial practice was sufficiently plead to consist of
switching the price of the beverage in the same restaurant from
a lower amount to a higher amount without disclosure, in
violation of the CFA.

The plaintiff in Dugan claimed TGI Friday's violated N.J.
Stat. Ann. 56:8-2.5, which provides:

> It shall be unlawful practice for any person to sell,
> attempt to sell or offer for sale any merchandise at
> retail unless the total selling price of such
> merchandise is plainly marked by stamp, tag, label or
> sign either affixed to the merchandise or located at
> the point where the merchandise is offered for sale.

The "affirmative act" is relevant to a CFA claim because
"to succeed on a CFA claim a plaintiff must satisfy three
elements of proof," one of which is unlawful conduct by the
defendant.  Id. at *6.  This element may be satisfied by showing
the "claimed CFA violation is the result of a defendant's
affirmative act."  Id. (citations omitted).

The Appellate Division ultimately concluded, "Dugan has
alleged sufficient facts to establish that the offer violated
the CFA.  Those allegations are therefore sufficient to
establish a potential violation of the [NJ]TCCWNA."  Id. at *8.

In the instant case, in her Amended Complaint, Ms. Watkins is not pursuing relief under the CFA, nor has she alleged any price differential or unconscionable practice of switching prices upward.  Moreover, the Amended Complaint is void of numeric data, which could assist the Court in determining whether Ms. Watkins suffered an "objective out-of-pocket loss" relevant to a CFA claim.  Thus, it does not appear Ms. Watkins would succeed on a CFA claim under the Dugan rubric, nor has she pled one.  Ms. Watkins raised only a single count under the NJTCCWNA.  Under this count she has alleged Defendants' failure to include prices for certain beverages on their menus is itself actionable under NJTCCWNA.

Returning to the NJTCCWNA, a plain reading of the phrase "which includes any provision" can lead only to the conclusion that the New Jersey legislature intended the NJTCCWNA to cover inclusions.  Finding that a plain reading of "includes" also covers its inverse, "omits," impermissibly reads in more prohibited conduct than is provided by the statute, even under a liberal construction approach.  In drafting the NJTCCWNA, the legislature targeted written documents presented by sellers to consumers or potential consumers and sought to protect consumers who might read an illegal provision, be deceived by the provision, and then fail to enforce their rights.

To illustrate the types of seller conduct it sought to prohibit, the New Jersey Legislature provided a list of such provisions:

> Examples of such provisions are those that deceptively claim that a seller or lessor is not responsible for any damages caused to a consumer, even when such damages are the result of the seller's or lessor's negligence. These provisions provide that the consumer assumes all risk and responsibilities, and even agrees to defend, indemnify and hold harmless the seller from all liability. Other provisions claim that a lessor has the right to cancel the consumer contract without cause and to repossess its rental equipment from the consumer's premises without liability for trespass. Still other provisions arbitrarily assert the consumer cannot cancel the contract for any cause without punitive forfeiture of deposits and payment of unfounded damages. Also, the consumer's rights to due process is often denied by deceptive provisions by which he allegedly waives his right to receive legal notices, waives process of law in the repossession of merchandise and waives his rights to retain certain property exempted by State or Federal law from creditor's breach.

L. 1981, c. 454, Sponsor's Statement to Assembly Bill No. 1660 (N.J. 1981). By using the verbs "claim," "provide," and "assert" and specifying which legal rights can be affected, the legislature appears to target only provisions included in the document that actively seek to mislead consumers as to specific rights. The Sponsor's Statement included no examples of deceptive omissions that were envisioned as falling within the scope of the statute.

New Jersey case law supports the proposition that the NJTCCWNA prohibits the inclusion of illegal provisions, but does

not address omissions.  See Smith, 2010 WL 5376316 (N.J. Super.
Ct. App. Div. Dec. 21, 2010) (consumer warranty contained a
provision that violated the Magnuson-Moss Warranty Act); United
Consumer Financial Services, Co. v. Carbo, 410, N.J. Super. 280
(App. Div. 2009) (retail installment sales contract contained a
provision that violated the Retail Installment Sales Act);
Jefferson Loan Co., 397 N.J. Super. 520 (App. Div. 2008)
("Nothing in the TCCWNA suggests that it applies to the mere
failure or omission to send a notice to a consumer, even when
the notice is otherwise required by another law."); Bosland, 396
N.J. Super. 267 (App. Div. 2007) (retail buyer's order included
an undisclosed documentary service fee in violation of New
Jersey's Consumer Fraud Act).

A similar conclusion can be reached by reviewing NJTCCWNA
cases in the United States District Court for the District of
New Jersey, each of which examined statements included in the
document rather than omissions therefrom.  See DeHart v. U.S.
Bank, N.A. ND, 811 F. Supp. 2d 1038, 1051-52 (D.N.J. 2011)
(payoff notices allegedly included excessive fees in violation
of NJTCCWNA); McGarvey v. Penske Automotive Group, 639 F. Supp.
2d 450 (D.N.J. 2009), vacated on other grounds Civ. No. 08-5610,
2010 WL 1379967 (D.N.J. March 29, 2010) (limited warranty
contained a provision that violated the Magnuson-Moss Warranty
Act); Rivera v. Washington Mutual Bank, 637 F. Supp. 2d 256

21

(D.N.J. 2009) (finding plaintiffs failed to state a claim under NJTCCWNA because they did not "identif[y] which provisions of either document allegedly violate a clearly established right . . . or responsibility . . . ."); Feder v. Williams-Sonoma Stores, Inc., Civ. No. 2-11-03070, 2011 WL4499300 *3 (D.N.J. Sept. 26, 2011) ("Even if the credit card transaction form constitutes a written consumer contract, plaintiff has not alleged that this 'contract' contains a written provision that violates State or Federal law.").

"In construing TCCWNA on a motion to dismiss, the court must determine if the Legislature intended to prohibit the conduct alleged." Smith, 2010 WL 5376316 *2 (citations omitted). One searches in vain for any legislative indication that the TCCWNA was addressing omissions in addition to inclusions. Because omitting certain prices from restaurant menus does not pose the same risk of misleading a consumer into failing to enforce her legal rights as an affirmative misrepresentation, the Court finds the New Jersey Legislature did not intend NJTCCWNA to apply to price omission.

5. Whether the omission of prices from menus in New Jersey violates either a clearly established legal right of the consumer or responsibility of the seller.

The Court has found that the mere omission of a beverage price on a restaurant menu in the circumstances alleged in the

22

case does not state a claim under the TCCWNA, because this statute governs the statements that are included in, not omitted from, a consumer contract or offer to contract.  The Court therefore declines to rule on whether the omission of prices from menus violates either a "clearly established legal right of the consumer" or a "clearly established legal ... responsibility of the seller" under other provisions of New Jersey law.  Even if such omission were actionable under other provisions, such omission does not give rise to a claim under the TCCWNA.


IV.   **CONCLUSION**

For the reasons expressed in this Opinion, The Court grants Defendants' motion for dismissal under Rule 12(b)(6) for failure to state a claim for which relief can be granted.  Plaintiff's Amended Complaint is dismissed without prejudice to Plaintiff's right to seek leave to file a second amended complaint within twenty-one (21) days of the entry of the accompanying order, correcting the deficiencies therein consistent with this Opinion.  The accompanying order shall be entered.




 **August 28, 2012**                           **s/ Jerome B. Simandle**
DATE                                    JEROME B. SIMANDLE
                                        Chief U.S. District Judge