IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

|  |  |  |
|---|---|---|
| CANDICE WATKINS, on behalf of herself, and all others similarly situated, | : : : : | HON. JEROME B. SIMANDLE |
|  | : | Civil No. 11-7182 (JBS/AMD) |
| Plaintiff, | : : |  |
| v. | : : | **OPINION** |
| DINEEQUITY, INC., et al., | : : |  |
| Defendants. | : : |  |

APPEARANCES:

Wesley Glenn Hanna, Esq.
Sander D. Friedman, Esq.
LAW OFFICE OF SANDER D. FRIEDMAN, LLC
125 North Route 73
West Berlin, NJ 08091
    Counsel for Plaintiff

John B. Kearney, Esq.
Christopher Neal Tomlin, Esq.
BALLARD SPAHR LLP
210 Lake Drive East
Suite 200
Cherry Hill, NJ 08002
    Counsel for Defendants

**SIMANDLE**, Chief Judge:

**I.   INTRODUCTION**

Plaintiff Watkins brings this putative class action alleging that Defendants DineEquity, Inc., and Applebee's International, Inc., d/b/a Applebee's Neighborhood Grill & Bar ("Applebee's"), d/b/a International House of Pancakes, LLC ("IHOP"), violated New Jersey's Truth-in-Consumer Contract,

Warranty and Notice Act ("TCCWNA"), N.J. Stat. Ann. § 56:12-14, et seq., by omitting the price of soda, beer, wine, coffee and other drinks from their restaurant menus. [First Am. Compl. ¶ 10.]

There are two motions before the Court: Plaintiff's motion for reconsideration of this Court's dismissal of the First Amended Complaint[1] [Docket Item 34] and Defendants' motion to dismiss Plaintiff's Second Amended Complaint. [Docket Item 42.]

The key issues are whether the Court overlooked controlling precedent and made a clear error of law in its previous Opinion, and, if not, whether Plaintiff's Second Amended Complaint pleads additional facts that would support a plausible claim under the TCCWNA. Because the Court finds that it did not overlook any controlling precedent, the motion for reconsideration will be denied, and because Plaintiff did not add new factual content to her Second Amended Complaint, the motion to dismiss will be granted.

## II.  Background

Plaintiff alleges that she purchased soft drinks and beers at Applebee's and IHOP restaurants and that prices for the beverages were not listed on the menus. [First Am. Compl. ¶ 13.] Plaintiff claims that, under New Jersey law, Defendants must

---

[1]  See Watkins v. DineEquity, Inc., No. 11-7182, 2012 WL 3776350 (D.N.J. Aug. 29, 2012) (dismissing the First Amended Complaint without prejudice).

communicate the price of all items at the point where the merchandise is offered for sale and that failure to do so is a violation of the TCCWNA.[2] [Id. ¶¶ 23-25.]

Defendants removed the action to this Court and, upon Defendants' motion, the Court dismissed the First Amended Complaint without prejudice. See Watkins, 2012 WL 3776350, at *7-*10. The Court determined that a restaurant menu fit within the definitions of a "notice," a "sign," or both, for the purposes of the TCCWNA. Id. at *6. But after considering the text of the statute, its legislative history, and state and federal case law, the Court ultimately concluded that the omission of prices from the menus did not trigger the TCCWNA. "Because omitting certain prices from restaurant menus does not pose the same risk of misleading a consumer into failing to enforce her legal rights as an affirmative misrepresentation, the Court finds the New Jersey Legislature did not intend NJTCCWNA to apply to price omission." Id. at *9. In light of this holding, the Court declined to consider whether the omission of prices from menus violated

_____

[2] As recounted in the Court's previous Opinion, Plaintiff originally brought a second claim under New Jersey's Consumer Fraud Act ("CFA"), N.J. Stat. Ann. § 56:8-1, et seq., but eliminated the CFA count from the First Amended Complaint. [Compare Docket Item 1 with Docket Item 20; see also Watkins, 2012 WL 3776350, at *7-*8 (discussing that the First Amended Complaint did not plead a CFA claim and that "it does not appear Ms. Watkins would succeed on a CFA claim under the Dugan rubric").] The Second Amended Complaint likewise contains only one count under the TCCWNA and is void of numeric data. [Docket Item 36.]

3

either a clearly established legal right of the consumer or responsibility of the seller. Id. at *10.

The Court granted Plaintiff the opportunity to seek leave to file a Second Amended Complaint. Plaintiff did not so move. Instead, Plaintiff simultaneously filed a timely motion for reconsideration under L. Civ. R. 7.1(i) and docketed a Second Amended Complaint without an accompanying motion seeking leave to amend. [Docket Item 36.] Defendants opposed the motion for reconsideration, and Plaintiff, again without seeking leave of the Court, filed a letter brief in reply, augmenting her argument with additional citations to case law. Defendants objected to the filing of a reply for a motion for reconsideration, because Plaintiff did not receive the Court's permission to so file, as required by L. Civ. R. 7.1(d)(3) ("No reply paper shall be filed, unless permitted by the Court, relating to the following motions: . . . Reconsideration under L.Civ.R. 7.1(i) . . . ."). Noting these procedural errors, Defendants requested that the Court strike the reply brief from the docket. [Docket Item 40.] Plaintiff responded by urging the Court to consider the motion for reconsideration "as requesting leave to amend as alternative relief." [Docket Item 41.]

Defendants nonetheless filed a motion to dismiss the Second Amended Complaint. [Docket Item 42.] While Defendants observed that Plaintiff's filing of the Second Amended Complaint did not

comply with this Court's Order of August 29, 2012, they agreed,

out of consideration for "judicial efficiency," to

> respond directly to the SAC with this motion to dismiss
> as opposed to waiting for plaintiff to separately file
> a motion for leave and then filing an opposition to
> that motion . . . . Defendants note that an opposition
> to a motion for leave to amend based on Rule 15 would
> turn on 'futility' arguments - precisely the same
> arguments as those made herein.

[Def. Mot. to Dismiss at 1 n.1.] Defendants argue that the Second

Amended Complaint adds legal conclusions but does not cure the

deficiencies that led the Court to dismiss the First Amended

Complaint. [Def. Mot. to Dismiss at 2, 5.]

## III. Analysis

### A. Motion for Reconsideration

A motion for reconsideration is "an extraordinary remedy to

be granted very sparingly." In re Lord Abbett Mut. Funds Fee

Litig., 417 F. Supp. 2d 624, 627 (D.N.J. 2005) (internal

quotation marks omitted). There are three grounds for relief upon

which a motion for reconsideration may be granted, under L. Civ.

R. 7.1(i): "(1) an intervening change in controlling law has

occurred; (2) evidence not previously available has become

available; or (3) it is necessary to correct a clear error of law

or prevent manifest injustice." Connolly v. Mitsui O.S.K. Lines

(Am.) Inc., No. 04-5127, 2010 WL 715775, at *1 (D.N.J. Mar. 1,

2010). The Local Rule dictates that the movant must identify the

matter or controlling decisions that the Court "has overlooked."

L. Civ. R. 7.1(i). In this case, "controlling" decisions are those issued by the New Jersey Supreme Court. Accord Wisniewski v. Johns-Manville Corp., 759 F.2d 271, 273-74 (3d Cir. 1985) ("Although lower state court decisions are not controlling on an issue on which the highest court of the state has not spoken, federal courts must attribute significant weight to these decisions in the absence of any indication that the highest state court would rule otherwise.")

Reconsideration is not appropriate to "relitigate old matters" or to voice disagreement with the court's decision. See Flores v. Predco Servs. Corp., No. 10-1320, 2011 WL 3273573, at *2 (D.N.J. July 29, 2011). "A motion for reconsideration is improper when it is used to ask the Court to rethink what it has already thought through - rightly or wrongly." Oritani Sav. & Loan Ass'n v. Fid. & Deposit Co. of Md., 744 F. Supp. 1311, 1314 (D.N.J. 1990) (internal quotation marks omitted).

Plaintiff's sole basis for reconsideration is that the Court overlooked a paragraph in Dugan v. TGI Friday's, Inc., No. L-0126-10, 2011 WL 5041391, at *8 (N.J. Super. Ct. App. Div. Oct. 25, 2011) (per curiam). As an initial matter, Dugan is not a controlling decision, as it was an unpublished decision by an intermediate appellate court. Therefore, it is not binding on this Court, and its holding cannot be "overlooked" within the meaning of L. Civ. R. 7.1(i). See Polizzi Meats, Inc. v. Aetna

Life & Cas. Co., 931 F. Supp. 328, 340 (D.N.J. 1996) (considering a motion for reconsideration and stating that "this court is guided, but not bound, by the rulings of the lower New Jersey appellate courts"). Language in Dugan cannot form the basis of a successful motion for reconsideration.

The Court also disagrees that Dugan stands for the proposition advanced by Plaintiff. In Dugan, the Superior Court of New Jersey, Appellate Division, considered whether the failure to disclose prices of beverages on a menu violated the CFA or the TCCWNA, when the restaurant charged one price for the beverages at the bar and another price at a table. Dugan, 2011 WL 5041391, at *1 ("Dugan's grievance revolves around the undisclosed price differential for the same product that is based upon where in the restaurant . . . the item is served."). Declining to dismiss the TCCWNA claim, the court stated:

> In this case, the affirmative act that may trigger the TCCWNA is the offer encompassed by TGIF's menu. We conclude that Dugan has alleged sufficient facts to establish that the offer violated the CFA. Those allegations are therefore sufficient to establish a potential violation of the TCCWNA. See Bosland, 396 N.J. Super. at 279. We do not read Jefferson Loan Co., Inc. to the contrary, which involved the inapposite failure to send a 'notice of explanation' to the consumer. Id. at 540. This is distinguishable from the allegations here, where Dugan's complaint claims that TGIF's menu - provided to customers in the usual course of business - failed to disclose the prices of beverages.

Id. at *8.

Plaintiff argues that Dugan stands for the proposition that

7

the failure to disclose prices on a menu is an affirmative act that may form the basis of a TCCWNA claim, absent a claim under the CFA. [Pl. Mot. Br. at 5.] Plaintiff also reiterates that she "alleged both the knowing non-disclosure of drink prices and the fact that offering a menu without prices is an unconscionable statutory violation. Either one could lay the foundation of a CFA claim." [Id. at 4 n.1.] Therefore, Plaintiff concludes that the Court should reconsider its holding in this case, based on the highlighted language in Dugan.

The Court considered this passage in Dugan. In fact, the Court quoted from it in to explain why Dugan was not persuasive in this case. See Watkins, 2012 WL 3776350, at *8 ("'Dugan has alleged sufficient facts to establish that the offer violated the CFA. Those allegations are therefore sufficient to establish a potential violation of the [NJ]TCCWNA.'") In Dugan, the court never held that the omission of prices from a menu constituted the basis for a self-standing violation of the TCCWNA. Rather, the court declined to dismiss the TCCWNA claim because the plaintiff had sufficiently pled a violation of the CFA, which in turn stated a claim under the TCCWNA. Dugan, 2011 WL 5041391, at *8. Moreover, as discussed in this Court's previous Opinion, Dugan is distinguishable from this case on its facts because Dugan concerned a "secret switch" in beer price from bar to table, whereas Plaintiff here complains only that the unchanging

prices of beverages were undisclosed. <u>Watkins</u>, 2012 WL 3776350, at *8. Moreover, Plaintiff deliberately removed her CFA claim from her First Amended Complaint, and thus she is unable to plead, as the plaintiff did in <u>Dugan</u>, that Defendants' actions constitute both a violation of the CFA and the TCCWNA. As previously noted, the lack of numeric data in the First Amended Complaint likely would foreclose the possibility of stating a claim under the CFA. <u>Dugan</u> does not stand for the proposition that Plaintiff articulates: that an omission of prices from the menu constitutes a self-standing violation of the TCCWNA.

In its previous Opinion, the Court then carefully analyzed the text of the statute, its legislative history, and state and federal case law. <u>See</u> <u>id.</u> at *8-*9 (examining, among other sources, the Sponsor's Statement to Assembly Bill No. 1660, and analyzing eight relevant state and federal cases). After finding no controlling precedent from the New Jersey Supreme Court, the Court concluded:

> One searches in vain for any legislative indication that the TCCWNA was addressing omissions in addition to inclusions. Because omitting certain prices from restaurant menus does not pose the same risk of misleading a consumer into failing to enforce her legal rights as an affirmative misrepresentation, the Court finds that the New Jersey legislature did not intend NJTCCWNA to apply to price omission.

<u>Id.</u> at *9. Plaintiff's motion for reconsideration will be denied.

For the sake of completeness, none of the citations in Plaintiff's reply brief are both controlling on this Court and

analogous to the present case on their facts. Plaintiff argues that Bosland v. Warnock Dodge, Inc., 964 A.2d 741 (N.J. 2009), stands for the proposition that an omission may be actionable under the TCCWNA. [Pl. R. Br. at 3.] But Bosland, like Dugan, was a case in which the court did not find a self-standing violation of the TCCWNA; rather, "the complaint's CFA allegations also sufficed to support her claim that the contract violated a clearly established legal right." Id. at 745. In addition, in that case, the defendant car dealership had charged the plaintiff at least $20 and possibly $40 more than necessary under the umbrella line item "Registration Fee," and the defendant's wrongdoing included overcharging the plaintiff and failing to provide an itemization of the registration fee sum. Bosland, 964 A.2d at 744. Here, Plaintiff makes no accusation that the prices she was charged were unreasonable. Bosland, then, does not shed light on whether a pure omission, without an allegation of overcharging the consumer, may constitute a stand-alone violation of the TCCWNA.

Next, Plaintiff cites Bozzi v. OSI Restaurant Partners, LLC, No. L-1324-11 (N.J. Super. Ct. Law Div. Dec. 16, 2011) (tentative disposition by Suter, J.)[3] as additional support for its position. [Pl. R. Br. at 2.] Bozzi suffers from the same

_____

[3] The Bozzi opinion is attached to Plaintiff's opposition to Defendants' motion to dismiss, Docket Item 44-3, Ex. B.

shortcomings. It is not a controlling opinion and therefore not binding on this Court, and the court in that case declined to dismiss the TCCWNA claim because the plaintiff had sufficiently pled a CFA violation. Bozzi, No. L-1324-11, slip op. at 9. In Bozzi, the plaintiff restaurant patron was charged two different prices for beer, depending on the hour he ordered the drinks, and claimed the restaurant did not provide notice of any discount during a "Happy Hour" period. Id. at 1-2. The Bozzi court simply did not analyze whether the conduct by the restaurant was actionable as a self-standing violation of the TCCWNA. Bozzi, therefore, provides little guidance on the matter to be decided here, where the restaurant charged one price (the reasonableness of which is not being challenged) without listing prices on the menu, and whether such an omission may be a self-standing violation of the TCCWNA.

Plaintiff's mere disagreement with this Court's previous Opinion and its reading of New Jersey court precedent cannot form the basis of a successful motion for reconsideration. See Oritani Sav. & Loan Ass'n, 744 F. Supp. at 1314 (explaining it is improper to ask the court to reconsider a matter it had already analyzed). For the reasons explained above, the motion for reconsideration will be denied.

**B. Motion to dismiss**

**i. Non-compliance with the Court's Order of August 29, 2012**

Ordinarily, the Court would direct Plaintiff to file a formal motion to amend the Complaint, consistent with this Court's August 29 Order. [See Docket Item 34 (ordering Plaintiff to file a motion seeking leave to amend the Complaint).] However, the parties here agree that such a command merely would waste time and resources. Because Defendants already have responded to the substance of the Second Amended Complaint and assert that they would raise identical arguments in opposition to a formal motion to amend, the Court finds that considering the motion to dismiss as such would prejudice neither party. Although Plaintiff should have filed a motion seeking leave to amend, the Court will review the motion to dismiss as currently presented on the docket.

**ii. Standard of review**

In reviewing a complaint on a motion to dismiss, the Court must "accept all factual allegations as true, construe the complaint in the light most favorable to the plaintiff, and determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief." Fleisher v. Standard Ins. Co., 679 F.3d 116, 120 (3d Cir. 2012). The complaint must contain "sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (internal quotation marks omitted). "A claim has facial plausibility when the plaintiff

12

pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. Legal conclusions are not entitled to the assumption of truth. Id. at 679; see also Bistrian v. Levi, 696 F.3d 352, 365 (3d Cir. 2012). To determine if a complaint meets the pleading standard, the Court must strip away conclusory statements and "look for well-pled factual allegations, assume their veracity, and then determine whether they plausibly give rise to an entitlement to relief." Id. (internal quotation marks omitted).

### iii. The Second Amended Complaint

Plaintiff's Second Amended Complaint, like the First Amended Complaint, alleges a single claim under the TCCWNA and does not bring a claim under the CFA. The Second Amended Complaint adds specific references to New Jersey statutes, including N.J. Stat. Ann. § 56:8-2.5, which prohibits the sale or offer of merchandise without a plain marking of the price on the merchandise or at the point of sale, and the TCCWNA. [Second Am. Compl. ¶¶ 4, 21, 27.] Plaintiff also devotes several paragraphs to summarizing and analogizing Dugan and Bosland to the facts of this case. [Id. ¶¶ 22(A)-(D), 23.] These paragraphs read like a motion brief and rehash many of the arguments made in Plaintiff's motion for reconsideration. The Court cannot discern any new factual allegations in the Second Amended Complaint.

Plaintiff highlights three paragraphs in its opposition
brief. The first paragraph states that Defendants' offer to sell
drinks without prices "is an <u>affirmative</u> <u>act</u> that triggers the
applicability" of the TCCWNA. [Pl. Opp'n at 3 (emphasis in
original); Second Am. Compl. ¶ 10.] The second describes
Defendants' "practice known as 'menu engineering[,]'" is
virtually identical to a paragraph in the First Amended
Complaint. [Pl. Opp'n at 4; <u>compare</u> First Am. Compl. ¶ 11, <u>with</u>
Second Am. Compl. ¶ 13.] The third paragraph states that
Defendants' offer of beverages without prices on otherwise
comprehensively priced menus is the affirmative act that triggers
TCCWNA liability. <u>Compare with</u>, <u>Dugan</u>, Slip Op. Page 20." [Pl.
Opp'n at 4; Second Am. Compl. ¶ 28.]

### iii. Whether Plaintiff cured the defects of the First Amended Complaint

Defendants argue that the Second Amended Complaint "does not
make any materially different factual allegations. It merely
repleads legal conclusions that the omission of beverage prices
from a menu constitutes an 'affirmative act' under TCCWNA." [Def.
Mot. Br. at 5.] Defendants argue that, if Plaintiff's legal
conclusions are disregarded, the Second Amended Complaint "does
nothing to cure the defects this Court identified when dismissing
the First Amended Complaint, presumably because plaintiff has no
additional facts to allege." [<u>Id.</u>] Defendants request dismissal

with prejudice. [Id. at 5.]

Plaintiff responds that the "complaint makes clear that the presentation of the offer in this matter is an intentional act with an improper purpose" and that the deliberate "menu engineering" constitutes an affirmative act. [Pl. Opp'n at 6.] Plaintiff also discusses Dugan, Bosland and Bozzi.[Id. at 7-10.]

When the Court strips away legal conclusions contained within the Second Amended Complaint - including all statements that Defendants' actions constitute affirmative acts that trigger liability under the TCCWNA - as well as discussions of legal precedent, the Second Amended Complaint is materially unchanged from the First Amended Complaint that this Court dismissed without prejudice. This Court is not required to accept as true Plaintiff's legal conclusions. Iqbal, 556 U.S. at 679. Moreover, as discussed supra, Part III.A, and in the Court's previous Opinion of August 29, 2012, the Court disagrees with Plaintiff's interpretation of the New Jersey case law and the scope of the TCCWNA. The Second Amended Complaint continues to assert that the omission of the prices from the menus is grounds for TCCWNA liability, a contention that this Court has rejected. Because the Second Amended Complaint contains no new factual allegations that plausibly present a claim for liability under the TCCWNA, for the reasons discussed above, as well as those set forth in the Court's previous Opinion, see Watkins, 2012 WL 3776350, at *7-*9

15

(explaining why the conduct alleged did not state a claim under the TCCWNA), the Court will grant the motion to dismiss with prejudice.

## IV.  Conclusion

Plaintiff's motion for reconsideration will be denied, and Defendants' motion to dismiss will be granted with prejudice. An accompanying Order will be entered.

**January 30, 2013**
Date

         **s/ Jerome B. Simandle**
JEROME B. SIMANDLE
Chief U.S. District Judge

16